# THE PEOPLE *v.* WM. WILLIAMS.

BIAS OF JUDGE—CHANGE OF VENUE.—Bias or prejudice on the part of the Judge, constitutes no legal incapacity to sit on the trial of a cause, nor is it a sufficient ground to authorize a change of the place of trial.

ERROR OF JUDGE NOT EVIDENCE OF BIAS.—The fact alone, that the Judge, on a previous trial of the same cause, made an erroneous ruling, is no evidence of the existence of bias or prejudice in his mind.

CHANGE OF VENUE FOR PREJUDICE OF JUDGE.—An affidavit made on application to change the place of trial, which states, "that the Judge, as the affiant is informed and verily believes, has frequently stated that he believed the affiant guilty of the crime charged in the indictment, and has frequently expressed himself against and adversely to the affiant in connection with said charge," does not merit consideration, as it contains a mere charge upon information and belief, and does not show how the information was obtained, or upon what the belief was based.

AFFIDAVIT FOR CONTINUANCE.—An affidavit for a continuance, which merely shows that the desired witness resides in another county from that of the place of trial, and that a subpœna has been placed in the hands of the Sheriff of the county where the witness resides, and has been returned not served on the witness, does not show sufficient diligence to entitle the defendant to a continuance.

AFFIDAVIT ON MOTION FOR NEW TRIAL.—An affidavit made on motion for a new trial, in a criminal case, on the ground that the jury received evidence out of Court, other than that given by the witnesses who testified on the trial, which states that the affiant is informed and believes that slips of a newspaper and a law book containing the evidence given on a former trial of the same case, were left in the room where the jury deliberated on their verdict; and that the affiant is informed and believes that while so deliberating, the jury read from said newspaper slips what purported to be the evidence taken on said former trial, and from said law book the evidence of a former trial as published in the same, is not sufficient to warrant the granting of a new trial.

PERFORMANCE OF DUTY BY JURORS.—The presumption is that jurors perform their duty in accordance with the oath which they have taken, and to overthrow this presumption, there must be some direct positive testimony, tending to show misconduct on the part of the jury.

APPEAL from the District Court, Sixth Judicial District, Yolo County.

The facts are stated in the opinion of the Court.

The report of this case on the first appeal to the Supreme Court will be found 18th Cal. 187.

*N. Greene Curtis* and *George R. Moore,* for Appellant.

In the case of *Spencer* v. *The State*, 8th Blackford, 281, the Court said, "the Court below erred in refusing a continuance of the case on the affidavit of the defendant, showing the absence of a material witness." (*Wade* v. *Milleken*, 16 Ill. 507; *Copenhaven* v. *The State*, 14th Geor. 22.

"It is a rule of law well settled that if a jury, after retiring to deliberate upon their verdict, hear other testimony, it will form a ground for a new trial." (*Hudson* v. *The State*, 9 Yerger, 408; *Booby* v. *The State*, 4 Yerger, 111; 18 *B. Munroe*, Ky. 291.)

The statute regulating proceedings in criminal cases, empowers the Court to grant a new trial, when the jury have separated without leave of the Court, after retiring to deliberate upon their verdict, or been guilty of any misconduct tending to prevent a fair and due consideration of the case. (Crim. Pr. section 440.)

The burden of proof rests upon the State to show that the defendant has not suffered any injury by reason of the irregularity complained of, and that in the absence of such proof, he is entitled to the benefit of the presumption that this irregularity has been prejudicial to him. (*People* v. *Brannigan*, 21 Cal. 337, and cases therein cited; *Sam* v. *The State*, 1 Swan, p. 61; *Atkins* v. *The State*, 16 Ark. 568.)

"If a paper calculated to influence a jury in favor of one of the parties gets improperly before them, while considering of their verdict, and they find for that party, it is a ground for a new trial." (*Walker* v. *Hunter*, 17 Georg. 364; *Wilson* v. *Wilkins*, 3 Foster, 471.)

*McCullough*, Attorney-General, for Respondent.

The mere affidavit of the defendant that the Judge was biassed, without specifying the facts, is not a sufficient showing to warrant this Court in interfering, or the Court below in granting a change of venue. (*People* v. *Fisher*, 6 Cal.

154; *People* v. *Mahoney*, 18 Cal. 180; *People* v. *Graham*, 21 Cal. 261.)

As to the affidavit for continuance, see Wood's Digest, §§ 325, 528, pages 295, 314. (*People* v. *Quincy*, 8 Cal. 89; *People* v. *Thompson*, 4 Cal. 240; *People* v. *Vanard*, 6 Cal. 562.)

The presumption is that the jury did their duty, and arrived at their verdict from the evidence.

Besides, it is not pretended that the people or a juror surreptitiously introduced into the jury room the papers. (*Ball* v. *Carley*, 3 Indiana, 578: *Bersch* v. *The State*, 13 Ind. 436; *Nolen* v. *The State*, 2 Head, Ten. 522.)

By the Court, SAWYER, J.

The defendant was indicted for murder in the first degree, tried, and convicted. An appeal was taken to this Court, the judgment reversed on the ground of an erroneous ruling in excluding certain evidence offered by defendant, and a new trial ordered. On the second trial a verdict of guilty was also returned by the jury. From the judgment rendered on this verdict, and the order denying a new trial, the present appeal is taken.

When the case was called for trial, the defendant filed an affidavit, in which he states " That he cannot have a fair and impartial trial in the Sixth Judicial District, and before the Judge of said Court, for the following reasons, to wit: First—Because said case has once been tried before said Judge, and that said Judge has improperly ruled upon the most of defendant's evidence adversely to the right of this affiant. Second—Because said Judge, as affiant is informed and verily believes, has frequently stated that he believed this affiant guilty of the crime charged in the indictment, and has frequently expressed himself against and adversely to this affiant in connection with said charge. Wherefore, this affiant says that he verily believes and avers the truth to

be that said Judge is biassed and prejudiced against him and against his said case, and that he cannot have a fair and impartial trial before said Judge in said Court."

On this ground, he moved for a change of the place of trial to some other county. The motion having been denied and exception taken, this ruling is assigned as error.

No authority has been cited to support the proposition that bias or prejudice on the part of the Judge constitutes a legal incapacity to sit on the trial of a cause. Our statute does not provide for any such disqualification. In discussing the subject of challenges, Wharton, in his work on American Criminal Law, sec. 2,945, says: "The practice among the civilians extends the right of challenges for cause to the Judges as well as to the jurors; and the great inclination of authority is, that the same causes which disqualify one disqualify the other. Where the Judge, like a Chancellor, sits to try both facts and law, as in the case with the civilians, there is peculiar reason for the application to him of a jealous test; and the cases where he may be challenged are placed in two classes: First—Where he is disqualified by circumstances beyond his control, (*e. g.*, relationship, or previous connection with the subject matter.) Second—Where he is disqualified by misconduct, (*e. g.*, partiality or prejudice.) But by the common law of England and America, where the Judge is a statutory officer subject to impeachment, and where the jury is unimpeachable, and from its character is peculiarly susceptible to those influences which produce incompetency, it would be as absurd as impracticable to treat each as subject to the same rule. A juryman, again, when challenged, may be readily replaced; but as a Judge could not sit to try his own competency, not only would every challenge involve an appeal, but it would be necessary to establish a reserved Court to sit subsequently in case a disqualification were found to exist. Under our system, therefore, there can be no such thing as the challenge of the Judge, the remedy, in case of criminal partiality, being found in impeachment.

\* \* \* \* In this light the Judiciary are, with us, clothed with powers and discretion far more absolute than those under the civil or modern continental law; and perhaps this may tend to give additional weight to those moral sanctions which require a Judge on the bench, whatever may have been his individual relations, to religiously divest himself of those prejudices, personal, social, or political, which would be a cause of disqualification to a juror." An application to change the place of trial on the ground stated, if not technically in form a challenge to the Judge, is substantially a challenge in effect, and the principles laid down by Wharton are equally applicable to the case.

A question, similar in principle, arose in the case of *The People* v. *Mahoney*, 18 Cal. 185, where it was claimed that the Judge was biassed against the prisoner, and a change of the place of trial asked on that ground. The Justice who delivered the opinion of the Court in that case says: "If the Judge acted illegally on the trial, or denied the prisoner his legal rights, this would be a good cause, on appeal, for reversal; but we cannot undertake to say that this consideration operated a legal disqualification of the Judge to sit." And in *McCauley* v. *Weller*, 12 Cal. 523, the question also directly arose in a civil case, and it was held that a manifest bias, and even an exhibition of partisan feeling on the part of the Judge, although "indecorous, improper, and reprehensible, as calculated to throw suspicion upon the judgments of the Court and bring the administration of justice into contempt," was not sufficient ground, under our statute, to authorize a change of the place of trial.

But, admitting that bias of the Judge is a sufficient ground for changing the place of trial, we are not satisfied that any such bias existed on the part of the Judge in the present instance as would justify the Court in reversing the judgment on that ground. The fact alone that the Judge, on a previous trial, made an erroneous ruling, is no evidence of such bias. Errors are often committed by the most impartial

Judges. It is not singular that the Judge, after hearing the testimony on the former trial, had formed or even expressed an opinion as to the prisoner's guilt. He must necessarily have formed one if he attended to his duties during the progress of the trial. If this were a disqualification, no Judge who has once tried a case could properly preside on a second trial of the same party for the same offence.

The Judge has nothing to do with determining the facts of the case. His province is to rule upon the admissibility of the evidence offered, and to charge the jury as to the law governing the case. If he errs in these particulars, the error can readily be corrected on appeal. The best evidence that the Judge discharged the duties impartially in this instance, and that no error was committed in these respects is, perhaps, the fact that the learned counsel of the defendant have made no point in their argument of this appeal upon the charge given to the jury, or upon any ruling made during the progress of the trial.

But the charge that the Judge had formed and expressed an opinion adverse to the appellant, and by implication that his mind was in such a condition as to render him incapable of giving the prisoner at the bar a fair and impartial trial, is made upon information and belief unsupported by any other testimony. Not even the names of the affiant's informants or the sources of his information are given; and no reason or motive is assigned why the Judge should entertain any improper bias or prejudice against the prisoner.

This charge is entirely too loosely made to merit any serious consideration by this Court.

Second—The second error relied on by the appellant is the refusal of the Court to continue the case on the ground of the absence of Ann and Mary Mathers and A. J. Harrington, witnesses on the part of the defendant.

As to the former two, the record shows that the Court postponed the trial from the 11th to the 13th of August to enable the defendant to procure their attendance, and that

they did attend and testify on his behalf at the trial of the cause.   As to the witness Harrington, no sufficient diligence to procure his attendance is shown by the affidavit upon which the application was based.   It simply states that a subpœna for these witnesses had been issued and placed in the hands of the Sheriff of Sacramento County on the 22d of July; that said witnesses were residents of the County of Sacramento, and that "the Sheriff has returned said subpœna not served on said witnesses."   No reason is assigned why it was not served.   It does not appear that the Sheriff was notified at what place in Sacramento County said witnesses resided, or that the Sheriff could not find the witnesses, or that he had made any effort to find them.

The trial was to take place in the County of Yolo.   In order to compel the attendance of these witnesses in the County of Yolo it was necessary to procure an order from the Judge or a Justice of the Supreme Court, or a County Judge, requiring their attendance in that county.   (Wood's Digest, page 311, Sec. 558.)   It does not appear that any such order was obtained or asked for.   The placing of a subpœna in the hands of the Sheriff of Sacramento County, without such order indorsed thereon, was therefore a nugatory act.   Besides, the affidavit was filed on the 11th of August.   The affidavit stated that all the witnesses resided in Sacramento County, and the first two above named in the Town of Folsom.   Upon filing the affidavit the Court postponed the trial till the 13th, and directed a subpœna to issue for the two witnesses stated in the affidavit to reside at Folsom, and indorsed the proper order thereon requiring their attendance; and their attendance was thereby secured on the 13th, the day to which the trial had been postponed.   But it does not appear that any further subpœna for Harrington was demanded, or that any order was asked for requiring his attendance.   It does not appear but that his attendance could have been procured had the same means been taken to secure it that were adopted in the case of the other two.   He ap-

pears to have resided in the same county, and there was the same time to find him as was allowed and as proved to be sufficient in the case of the others. No reason is shown why the attendance of Harrington could not be procured. It is worthy of remark in this connection that the two witnesses whose attendance was secured by the postponement did not testify in accordance with the appellant's expectations, as stated in his affidavit. They entirely fail to show where the prisoner was during a large portion of the evening on which the homicide was committed, and including the time at which, according to Blake's testimony, the act was perpetrated. This fact, taken in connection with the fact that those witnesses were members of the same family with the prisoner at the time of the homicide; that he had had one trial, and must be supposed to have known what their testimony would be; and the further fact that no serious effort appears to have been made to secure Harrington's testimony during the interval which elapsed between the 11th and 13th of August, has a tendency to cast a strong shade of suspicion over the good faith of the application for a continuance.

We do not think sufficient diligence was shown to procure Harrington's attendance. There was consequently no error or abuse of discretion in refusing a continuance. (*People* v. *Quincy,* 8 Cal. 89; *People* v. *Thompson,* 4 Cal. 241.)

Third—The third and last point relied on is, that the Court erred in refusing to arrest the judgment and in overruling the motion for a new trial on the ground that the jury received evidence out of Court other than that given by the witnesses who testified against him on the trial.

This ground is based upon the affidavit of the appellant, in which he states in substance that he was tried for the same offence in Sacramento County in December, 1860; that the *Sacramento Union* published what purports to be the evidence in the case; that on the trial now under consideration the attorneys, both of the people and the appellant, used the said printed evidence, in slips clipped from the *Sacramento Union;*

that after the jury had been charged by the Judge, the Judge, attorneys, witnesses, and spectators, in pursuance of an order to that effect, left the Court-room, the jury remaining to deliberate on their verdict; that he is informed and believes that said slips from the *Sacramento Union*, containing the evidence given on the former trial, and several law books, including the 18th volume of the California Reports, said volume containing a report of said cause and a large portion of the evidence taken on said former trial, were left on the bar or table of said Court where said jury remained to deliberate on their verdict; that he is informed and believes that while so deliberating the jury read, from said newspaper slips, what purported to be the evidence taken against him on said former trial, and from said 18th volume California Reports, the evidence as published in the report of said cause—all of which he believes was prejudicial to him in the finding of the verdict of the jury.

There is no direct positive statement that those slips or the volume referred to were left in the Court-room; and no direct statement that the jury read them, if left.

The affiant only states that he is informed and believes they were left in the room and read by the jury. He does not claim to have any personal knowledge on the subject. It does not appear from whom he received his information. The parties giving the information make no affidavit on the subject.

If his informants had any knowledge on the subject their affidavits could and should, and in a matter of so much importance to the prisoner, doubtless would have been produced. The sources of the affiant's information should at least have been disclosed, in order that the District Attorney might have had an opportunity of verifying or disproving the matters alleged, as the truth might be.

It does not appear by whom or how these slips and books were left in the Court-room. Admitting that they were left, as alleged, *non constat*, that they were not left by the prisoner

himself, or by some party on his behalf, for the very purpose of vitiating the verdict in case it should be against him.   It is not pretended that they were introduced surreptitiously on the part of the people for the purpose of influencing the verdict, or that the District Attorney or the Judge was aware of their being left in the Court-room.   Nor does it appear that the printed matter so left was not a perfectly correct transcript of the evidence, or that it in any particular differed from the evidence given before the jury on the trial.

It does not appear, except by the affidavit of the prisoner, upon information and belief merely, unsupported by any other evidence, that it even came to the knowledge of the jury that the obnoxious papers were in the room where the jury were deliberating.

It is not to be presumed that the jurors violated their duty by hunting up and reading evidence not given to them in the progress of the trial in open Court under the sanction of the Judge.   The presumption is that they performed their duty in accordance with the oath which they had all taken before entering upon the trial of the case.   To overthrow this presumption there must be some direct positive testimony tending to show misconduct on the part of the jurors in this particular.   It is not enough that this objectionable matter was inadvertently left in the room, with other books and papers, where the jury might by chance have found it. There must be some positive testimony by some person, who has knowledge of the facts which he states, showing that the jurors, or some one of them, read the testimony referred to, or at least that they found it, or that it in some way came to their notice.   No such testimony is produced in this case, and the Court, therefore, did not err in denying a new trial or in refusing to arrest the judgment.

No error having been brought to the notice of the Court, the judgment is affirmed, and the District Court is directed to fix a day for carrying the sentence into execution.