(No. 21787.—

THE PEOPLE *ex rel.* Arthur F. Witte, County Collector, Appellee, *vs.* WALTER S. FRANKLIN *et al.* Receivers, Appellants.

*Opinion filed April 22, 1933—Rehearing denied June 13, 1933.*

DeYoung, J., dissenting.

WILSON & SCHMIEDESKAMP, (N. S. BROWN, and L. H. STRASSER, of counsel,) for appellants.

EDWARD P. ALLEN, State's Attorney, and ARTHUR R. ROY, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

This appeal comes from a judgment of the county court of Adams county against the Wabash Railway Company, which, together with its receivers, are the appellants. The issue involves alleged delinquent taxes, interest, penalties and costs for the year 1931.

Appellants filed objections in the county court to the levy and extension of certain items included in the appropriation and tax levy order of the Adams county board of supervisors adopted at its September, 1931, meeting. Certain of its objections were sustained, but the items to which its objections were overruled, and which are at is-

sue here, are the following: (*a*) Maintenance of county home, $16,000, and (*b*) assessment and collection of revenue, $10,000.

It is contended by appellants that item (*a*) was unauthorized and constituted a double levy, as the respective towns either had made a levy for the care of poor and indigent persons for the year 1931 or had sufficient funds on hand for that purpose. In support of this position they rely chiefly upon an amendment by the legislature in 1931 to section 15 of the act entitled "An act to revise the law in relation to paupers," requiring towns in counties (such as Adams) under township organization, and of less than 500,000 inhabitants, to relieve and support all poor and indigent persons legally resident within such towns, "except as herein otherwise provided." (Smith's Stat. 1931, chap. 107, par. 15.) But this amendment, as is shown by its phraseology and its other related sections, was clearly not intended by the legislature to impair or abrogate the powers and duties otherwise conferred upon the counties of this State to maintain county homes and county farms. Section 33 of the same amendment and passed at the same time provides that "when any county shall have provided a suitable poor-house for the accommodation of the poor of the county, and the same is ready for the reception and care of the poor, all the poor persons requiring the care and support of the county, or the township, as the case may be, may be cared for and supported at such poor-house," etc. The statute, in enumerating the powers of counties, (Smith's Stat. 1931, chap. 34, sec. 24, subdiv. 7,) provides that each county shall have power to erect and maintain county hospitals "for the care of such sick as may by law be proper charges upon the county." Paragraph 1 of section 28 of the Paupers act (Smith's Stat. 1931, p. 2169,) provides that the county board shall have power "to acquire in the name of the county by purchase, grant, gift or devise, a suitable tract or tracts of land upon which to erect and

maintain a county poor-house and other necessary buildings in connection therewith, and for the establishment and maintenance of a farm for the employment of the poor," etc.

From a consideration of these different statutes, and particularly amended section 33 of the Paupers act above quoted, it seems clear that the chief purpose of the legislature in amending section 15 of the same act was to impose upon the different townships of each county the power and duty to "relieve and support all poor and indigent persons lawfully resident" therein. Section 33, by providing that "all the poor persons requiring the care and support of the county, or the township, as the case may be, may be cared for and supported at such poor-house," plainly shows the legislative intent in this regard, and makes it possible, as before, for the various townships to place their poor persons in the one central county home, where, if sick or otherwise incapacitated, they may receive proper institutional care. But the township is not thereby relieved of its financial obligation of paying for the support of its own poor, as this it is required to do under section 15. The different statutes above mentioned relating to the establishment and maintenance of county homes and county farms for the care and treatment of sick and indigent persons are distinctly and essentially humanitarian in their purpose, and must therefore receive a liberal construction where no constitutional provision is violated. This court takes judicial notice of the emergency relief measures taken by the State and nation to relieve unemployment and distress during 1931 and 1932. The fact that various townships in Adams county made levies in 1931 for pauper relief does not render the levy by the county for maintenance of the county home void as double taxation, as the levies were made for two distinct purposes by two separate and distinct taxing districts. It would do violence to the intent of the legislature, so clearly expressed in section 33 of the 1931 amendment to the Paupers act, to hold that by virtue

of amended section 15 the counties of this State could no longer levy taxes to maintain their various county homes and farms for the care of their unfortunates. In fact, when these two sections are read and construed together, little doubt remains that the purpose of the legislature was not to restrict or abolish the use of county poor-houses, but, on the contrary, was to aid the counties of the State by making each town responsible for the relief and support of its own poor and indigent persons. Under these amendments and the other statutes above referred to, all counties of less than 500,000 population may own, maintain and operate poor-houses or poor-farms, and the various townships, while liable for the support of their own paupers, may nevertheless arrange with the county board of their county for the care and keep of their poor and indigent persons at the county home or poor-house, under such terms as may be agreed upon.

Appellants further contend that the levy is too uncertain and indefinite, citing *People* v. *Chicago, Burlington and Quincy Railroad Co.* 256 Ill. 476. But in that case the levy was only, "county farm, $6000," and the objection was sustained under the doctrine enunciated in *People* v. *Bowman,* 253 Ill. 234, where this court held that such items as "for county farm, $25,000," "for county jail $15,000," were too indefinite, because they did not disclose whether the money was levied to buy grounds and buildings, to improve buildings or to maintain them. The present levy must receive a reasonable construction and is not objectionable under the line of cases cited, as its purpose is sufficiently designated to comply with the law. *People* v. *Jackson, 272* Ill. 494; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 266 id. 196.

The objection to item (*b*) is also that it is too indefinite, and, further, because it levies a tax for both the assessment and collection of taxes, without specifying the amount required for each purpose. The purpose of the levy is suffi-

ciently stated, under the rules above announced, not to be void for indefiniteness. The objection to the item because of its failure to specify separate amounts for the assessment and collection of revenue was properly overruled by the trial court. Only one general purpose is embraced within the term "assessment and collection of revenue." The legal process by which assessments are made, reviewed and collected is a continuous one, with ever-shifting and closely-related duties to be performed by various officials. Thus, the county clerk prepares the assessment books for the township assessors, the county treasurer supervises and publishes the assessments, following which they are reviewed by the board of review and returned to the county clerk for extension of the taxes, then turned over to the treasurer again for collection. The assessment is only the first step towards the collection of revenue. It is the means by which the amount to be collected is determined. The subject matter is the same, "revenue," and the words "assessment and collection of" only relate to the progressive steps necessary to secure such revenue. In our opinion the levy is sufficiently definite, as it was not for several separate purposes, and the tax-payer has not been denied any useful information or deprived of any of his rights by its terminology. *People* v. *New York Central Railroad Co.* 305 Ill. 434.

Further objections were made by appellants to the road and bridge taxes in the towns of Fall Creek, Melrose and North East, which were overruled by the county court. The objections here were to the taxes extended in each of these townships on a rate in excess of twenty-five cents on the $100 valuation, the excess being fixed by the board of town auditors at eight cents in the town of Fall Creek, five cents in the town of Melrose and three cents in the town of North East. In support of this position appellants contend that section 56 of "An act to revise the law in relation to roads and bridges," (Smith's Stat. 1931, chap. 121,

par. 62,) is unconstitutional in authorizing a justice of the peace, who is a statutory member of the board of town auditors, to exercise legislative powers allegedly prohibited by article 3 of the constitution. Article 3 of the constitution provides that "the powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." This constitutional provision cannot be given the literal interpretation appellants seek for it, so as to absolutely prevent any overlapping of one of the departments of government with another. Thus, in *Field* v. *People,* 2 Scam. 79, in considering this same subject, this court said: "It does not mean that the legislative, executive and judicial powers should be kept so entirely separate and distinct as to have no connection or dependence the one upon the other, but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government and those of the general and State governments is evidenced by the constitutions of all. In every one there is a theoretical or practical recognition of this maxim and at the same time a blending and admixture of different powers. This admixture, in practice, so far as to give each department a constitutional control over the other, is considered by the wisest statesmen as essential in a free government as a separation. This clause, then, is the broad, theoretical line of demarcation between the three great departments of government." To the same effect the language used by this court in *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, must be noted: "The fundamental principle underlying this division of powers is to be understood in a limited and qualified sense.

The legislative, executive and judicial powers are not to be kept so entirely separate and distinct as to have no connection or interdependence. In every constitution there is a blending and admixture of different powers." From these and other similar authorities which might be cited to the same effect, it is apparent that section 56 is not unconstitutional by reason of the presence of justices of the peace on the boards of town auditors. The action of the board of town auditors in giving consent to the levy of a greater road and bridge tax than twenty-five cents and not exceeding thirty-three cents is not the exercise of judicial power.

Appellants further contend that the proviso of section 56 of the Road and Bridge act confers upon the board of town auditors arbitrary and discretionary powers to increase the limitations of the tax rate determined by the legislature without giving the right of appeal to any tax-payer, and in so doing contravenes section 2 of article 2 of the constitution by taking property without due process of law. They assert that the determination of limitations of tax rates is exclusively a legislative function and cannot be unconditionally delegated to any individual or official body. Under section 56 of the Road and Bridge law the commissioner of highways determines the amount of taxes necessary to be levied, which shall not exceed twenty-five cents on the $100 valuation, unless he receives the consent, in writing, from the board of town auditors to levy a greater amount, in which case the amount shall not exceed thirty-three cents on the $100 valuation. The due process of law clause of the constitution is not violated by the provisions of section 56, as the legislature has made no attempt therein to delegate any of its legislative powers to the board of town auditors, as was the case in *People* v. *Beekman & Co.* 347 Ill. 92, *People* v. *Federal Surety Co.* 336 id. 472, and other cases cited by appellants. Section 56 contains no delegation of legislative power but only confers discretion on the board of town auditors to consent to the levy of taxes

within certain narrowly defined limits and is therefore not obnoxious to the constitutional provision mentioned. (Sutherland on Stat. Const. 68.) It was not such an arbitrary and unlimited placement of power as would bring it within the rules laid down in *Sheldon* v. *Hoyne,* 261 Ill. 222, *Welton* v. *Hamilton,* 344 id. 82, and other cases of the same character cited by appellants. The board's discretion was fixed by the legislature at a rate not to exceed thirty-three cents on the $100 valuation. The discretionary power given by section 56 to the board of town auditors to consent to an additional levy of eight cents after the commissioner had made a levy not exceeding twenty-five cents is not more subject to abuse of discretion than the authority delegated to the commissioner, in the first instance, to fix a rate at any sum not exceeding twenty-five cents on each $100 valuation. It would be practically impossible for the State taxing authorities to determine the necessary rate each year for different purposes in each of its minor political subdivisions, and where the local legislative or quasi-legislative authority has been restricted by statute in its power to levy taxes and has confined its tax levies within the limits of these legislative restrictions, section 2 of article 2 of the constitution has not been violated.

For the reasons above stated the judgment of the county court of Adams county is affirmed. *Judgment affirmed.*

Mr. JUSTICE DEYOUNG, dissenting:

The tax-payer's right to have separately stated the purposes for which public money is appropriated or a tax is levied is a substantial right of which he may not be deprived. (*People* v. *Missouri Pacific Railroad Co.* 332 Ill. 53.) The levy of $10,000 for "assessment and collection of revenue," in my opinion, is not sufficiently itemized and does not give the tax-payer the information to which he is entitled.