(No. 24549.
GEORGE B. GILLESPIE, Appellee, *vs.* EDWARD J. BARRETT,
Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed April 20, 1938—Rehearing denied June 15, 1938.*

OTTO KERNER, Attorney General, (W. F. GRAY, and
MONTGOMERY S. WINNING, of counsel,) for appellants.

LOUIS F. GILLESPIE, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

George B. Gillespie, a taxpayer, filed suit in the circuit court of Sangamon county to restrain the Auditor of Public Accounts and the State Treasurer from drawing or paying warrants against the appropriations provided in three acts of the legislature creating the Gettysburg Memorial Commission, the Golden Gate Exposition Commission and the New York World's Fair Commission. The first act (Laws of 1937, p. 192) provides for the creation of a commission of ten members of the house of representatives, to be appointed by the speaker, and ten members of the senate, to be appointed by the president upon the advice and consent of the senate executive committee. This commission is directed to coöperate with the Pennsylvania State Commission for the erection of an "Eternal Light Peace Memorial" upon the site of the battle of Gettysburg. Five thousand dollars is appropriated toward the construction of the memorial, with an additional $2500 to be used to pay any expenses necessarily incurred in administering the act. The latter two acts (Laws of 1937, pp. 193, 217) provide for the creation of two commissions, one to select a site, erect a suitable building, prepare exhibits and provide for representation of the State of Illinois at the Golden Gate Exposition in San Francisco in 1939; the other to perform the same functions at the New York World's Fair also to be held in 1939. Both commissions are to consist of the Governor, as chairman, five members of the house of representatives of the Sixtieth General Assembly to be appointed by the speaker, five members of the senate of the Sixtieth General Assembly to be appointed by the president upon the advice of the executive committee, and five citizens from the State at large to be appointed by the Governor. One hundred thousand dollars is appropriated in each act to carry out its respective provisions but it is specifically provided that the members of the commissions shall not receive any compensation, directly or indirectly, except

the actual expenses incurred in the performance of their duties. The circuit court awarded injunctions as prayed, and the case properly comes here on direct appeal, as constitutional questions are involved.

The power of the legislature to appropriate money for the purposes outlined in these statutes is not questioned nor is the wisdom of such expenditures of public funds a matter of which we can properly take cognizance. The sole issue here is whether the legislature has power to appoint its members to commissions authorized to supervise the spending of these appropriations. While reasonable men might differ as to the wisdom of permitting members of the legislature to perform the duties imposed upon these commissions, yet, as we have often said, it is not the province of the judiciary to interfere with matters of legislative wisdom or policy. As above stated, we are concerned only with questions of legislative power.

Plaintiff contends that the attempted exercise of this power violates article 3 of the constitution which provides: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." This provision, however, is merely a statement of the underlying principle of our form of government; it cannot be given such literal interpretation as would absolutely prevent any overlapping of one of the departments of government with another. (*People* v. *Franklin,* 352 Ill. 528.) In *Field* v. *People,* 2 Scam. 79, this court said, in construing a similar provision in the constitution of 1818: "This is a declaration of a fundamental principle; and, although one of vital importance, it is to be understood in a limited and qualified sense. It does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as

to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. * * * This clause, then, is the broad theoretical line of demarcation, between the three great departments of government. But we are not, therefore, when a question arises as to the extent of the powers of either, to confine our views to this general clause, which confers no specific powers. We should look to the division as actually made to see what powers are clearly granted; for such only can be exercised."

It has been the uniform holding of this court, both under the present constitution and prior ones, that the legislature possesses every power not delegated to some other department or to the Federal government, or not denied to it by the constitution of the State or of the United States. (*Fenske Bros. Inc.* v. *Upholsterers International Union,* 358 Ill. 239; *Greenfield* v. *Russel,* 292 id. 392; *People* v. *Thompson,* 155 id. 451.) There is no provision in the constitution providing that the executive department shall have the sole power to appoint members of commissions representing the State officially or to exclusively supervise the spending of money appropriated by the legislature. Nor is there any restriction upon the legislature or the members thereof to prevent them from performing these duties. These statutes, then, are not unconstitutional merely because members of the legislature may be called upon to perform temporary duties which may be classified theoretically as executive or administrative.

These statutes are also claimed to violate section 15 of article 4 of the constitution: That section provides: "No person elected to the General Assembly shall receive any civil appointment within this State from the governor, the governor and senate, or from the General Assembly, during the term for which he shall be elected; and all such ap-

pointments * * * shall be void," etc. While the term "civil appointment" is used in our constitution, we find the words "civil office" more frequently used in the constitutions of other States. Despite the difference in words, decisions from such States construing the term "civil office" are helpful, though of course not binding upon us. It has been held, for example, that members of a State legislature cannot accept membership on a fish and game commission or become collector of State revenue, (*State* v. *Corley,* 172 Atl. (Del.) 415,) or accept a position as auditor of a State board of prison directors, (*Chenoweth* v. *Chambers,* 33 Cal. App. 104, 164 Pac. 428,) or as a district attorney. (*Satterwhite* v. *Garrison,* 34 Cal. App. 734, 168 Pac. 1053.) On the other hand, it has been held to be unobjectionable for a member of the legislature to receive an appointment to a commission to study the departments of State government with a view of introducing economies, (*Mulnix* v. *Elliott,* 62 Colo. 46, 156 Pac. 216,) or to accept a position as auditor for a board of railroad commissioners. (*State* v. *Hawkins,* 79 Mont. 506, 257 Pac. 411.) In this latter case, the Supreme Court of Montana, after an exhaustive review of existing authorities, held that an office proscribed by constitutional provisions similar to our section 15 of article 4 is one created by the constitution or statute, its tenure must be permanent and not temporary, and the incumbent must be entrusted with the exercise of the sovereign power of the State.

We have searched the debates of the constitutional convention of 1869 and find nothing which aids us in interpreting this section. Indeed, we have been able to discover only two decisions construing constitutional provisions similar to the one in this State which contain the words "civil appointment." In one, *Fyfe* v. *Mosher,* 149 Mich. 349, 112 N. W. 725, it was held that a member of the legislature could not be a delegate to a constitutional convention. In the other, *People* v. *Tremaine,* 252 N. Y. 27, 168 N. E.

817, the Court of Appeals of New York held that a statute conferring power on the Governor and the chairmen of two committees of the legislature to segregate lump sum appropriations to governmental departments was invalid because it conferred civil appointments upon members of the legislature. In the course of its opinion, that court said: "The positions are created and filled by the legislature; the incumbents possess governmental powers; the powers and duties of the positions are defined by the legislature; such powers and duties are performed independently; the positions have some degree of permanency and continuity. Their power is not exhausted by a single act but is a general supervisory power over a large group of appropriations, amounting to nearly $9,000,000 to be exercised whenever the occasion arises," etc. We believe that this construction is based upon sound reasoning and that section 15 of article 4 of our constitution should be similarly interpreted.

The purpose of section 15 is salutary and we would not hesitate to apply it rigorously against any member of the legislature who accepted an appointment within its provisions during his term of office. Its provisions were designed primarily to prevent members of the General Assembly from holding other remunerative civil positions, often requiring them to perform duties wholly incompatible with the public service they were chosen to render. We do not believe, however, that appointments to the commissions here in question are civil appointments within the meaning of section 15. To come within its proscription, an appointment must be of a permanent nature and must lend itself to personal aggrandizement with an opportunity for private gain, pecuniary or otherwise. Such is not the case here. The appointments are merely temporary; the statute forbids the payment of salaries directly or indirectly, and no policy-making power is delegated. The members of the commissions are merely entrusted with the supervision of the ministerial details of a legislative enactment. Upon

disposing of the property after the close of this exposition it is clearly the intent of these acts that the proceeds received from liquidation thereof be accounted for and paid into the State treasury.

The judgment of the circuit court of Sangamon county is reversed.

*Judgment reversed.*