(No. 63966.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DEBORAH ANN WALKER, Appellant.

*Opinion filed February 11, 1988.*

WARD, J., specially concurring.
MILLER, J., joined by SIMON, J., specially concurring.

Daniel D. Yuhas, Deputy Defender, and John J. Hanlon, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, and Chase Leonhard, Assistant State's Attorney, of Urbana, for the People.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for *amicus curiae* Neil F. Hartigan, Attorney General of the State of Illinois.

Joshua Sachs, of Chicago, for *amicus curiae* Illinois Attorneys for Criminal Justice.

JUSTICE CLARK delivered the opinion of the court:

For the past 114 years, Illinois law has protected the constitutional right to a fair and impartial trial in criminal cases by providing for the substitution of a judge who is allegedly prejudiced against a defendant. (See Ill. Rev. Stat. 1874, ch. 146, pars. 18 through 21.) Although the procedure for invoking the protections of the automatic-substitution-of-judge statute has varied over time, the prophylactic purpose of the statute has remained the same: this court has consistently held that the statute vests criminal defendants with the "absolute right" to have an assigned trial judge substituted upon a timely written motion containing a good-faith allegation that the judge is prejudiced. (See *People v. Peter* (1973), 55 Ill. 2d 443, 458; *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 506; *People v. Moore* (1962), 26 Ill. 2d 236, 237.) The vigor with which this court has upheld the basic constitutional right to a trial before a fair and impartial judge is reflected in this court's long held view that the provisions of the automatic-substitution-of-judge stat-

ute should be construed liberally "to promote rather than defeat" substitution, and its willingness to find reversible error where the statute is not so construed. See, *e.g., People v. Smith* (1963), 28 Ill. 2d 445, 447; *People v. Mosley* (1962), 24 Ill. 2d 565, 570; *People v. Dieckman* (1949), 404 Ill. 161, 164.

The issue in this appeal is whether section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(a)), a part of the current substitution-of-judge statute, violates the separation of powers clause of the 1970 Constitution (Ill. Const. 1970, art. II, §1).

The defendant, Deborah Ann Walker, was charged by indictment in the circuit court of Champaign County with one count of battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3) and one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)) on June 19, 1986. At her arraignment on June 24, 1986, the defendant entered a plea of not guilty and was advised by the arraigning judge that the bailiff had randomly assigned her case to the trial calendar of circuit judge Robert J. Steigmann. On June 27, three days after arraignment, the defendant filed a timely motion for substitution of judge pursuant to section 114—5(a). Section 114—5(a) provides:

> "Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony or may be punished by death

or life imprisonment, the defendant may name two judges as prejudiced." Ill. Rev. Stat. 1985, ch. 38, par. 114—5(a).

In compliance with section 114—5(a), the defendant alleged in her motion that Judge Steigmann was prejudiced against her and that she believed that she would not receive a fair and impartial trial before him. On July 29, the State's Attorney for Champaign County filed an objection to the defendant's motion for substitution of judge and a countermotion requesting that section 114—5(a) be declared "an unconstitutional infringement upon the inherent powers of the judiciary." The State's Attorney did not then, and does not now, dispute the good faith of defendant's allegation of prejudice or her fear that she would not receive a fair trial before the assigned circuit judge.

Following a hearing on the defendant's motion for substitution of judge and the State's Attorney's objection and countermotion, the circuit judge, in a written order, ruled section 114—5(a) unconstitutional as an undue infringement on judicial administrative authority. Drawing upon his personal experience of hearing criminal cases for over nine years, the circuit judge stated that the section 114—5(a) motion had become a motion for substitution of judge "not for *prejudice*, but for *preference*." (Emphasis in original.) As an example, the judge took "judicial notice" of his experience in presiding over criminal cases while on temporary assignment in Cook County. According to the judge, after he would grant a section 114—5(a) motion for substitution of judge, defense counsel would often reveal that the basis for the motion was that the judge usually sat downstate.

We allowed the defendant's motion for leave to appeal as a matter of right (107 Ill. 2d R. 603). It should be noted that after leave to appeal was granted, we allowed the Attorney General to file a 25-page *amicus* brief urging the court to reverse the circuit court's ruling that

found section 114—5(a) unconstitutional. The Attorney General has thus asked, albeit in not as blunt language, that we hold contrary to the State's Attorney's position on appeal. We allowed the Illinois Attorneys for Criminal Justice to also file an *amicus* brief in support of the defendant's position on appeal.

The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers belonging to another." (Ill. Const. 1970, art. II, §1.) Our constitution does not attempt to define legislative, executive and judicial power, it being neither practicable nor possible to enumerate the myriad powers of government and to declare that a given power belongs exclusively to one branch for all time. In both theory and practice, the purpose of the provision is to ensure that the whole power of two or more branches of government shall not reside in the same hands. *Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 292; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174.

The separation of powers provision was not designed to achieve a complete divorce among the three branches of our tripartite system of government. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58; *People v. Reiner* (1955), 6 Ill. 2d 337, 342.) Nor does it prescribe a division of governmental powers into rigid, mutually exclusive compartments. (*People v. Joseph* (1986), 113 Ill. 2d 36, 41; *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119.) Because each branch of government is not required to exercise its powers in complete isolation of the other two branches, the separation of powers doctrine contemplates a government of separate branches having certain shared or overlapping powers. (*Gillespie v. Barrett* (1938), 368 Ill. 612, 614; *People ex rel. Witte v. Franklin* (1933), 352 Ill. 528, 534.) Thus, the decisions of this court recognize that the separation of powers provision does not prohibit

every exercise of functions by one branch of government which ordinarily are exercised by another. (*Knuepfer v. Fawell* (1983), 96 Ill. 2d 284, 292; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174-75; see also 1 F. Cooper, State Administrative Law 16 (1965).) More specifically, this court has held that the legislature has the power to enact laws concerning judicial practice which "do not unduly infringe upon the inherent powers of the judiciary." *People v. Taylor* (1984), 102 Ill. 2d 201, 207; *People v. Davis* (1982), 93 Ill. 2d 155, 161; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.

We are mindful in our analysis that, like all legislative enactments, a strong presumption of constitutionality attaches to section 114—5(a), and that the burden rests upon the State's Attorney, as the challenging party, to demonstrate its invalidity. (*Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 20; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368.) Initially, we note that the parties agree that the circuit judge, in ruling section 114—5(a) unconstitutional, mistakenly believed that he could properly take judicial notice and consider his personal experience with instances where the good faith of an allowed section 114—5(a) motion was later revealed suspect. Citing *Vulcan Materials Co. v. Bee Construction* (1983), 96 Ill. 2d 159, and *People v. Davis* (1976), 65 Ill. 2d 157, the State's Attorney concedes that the judge's experience and observations are not judicially noticeable facts capable of immediate substantiation by easily accessible sources of indisputable accuracy. Nevertheless, the State's Attorney asserts that section 114—5(a) violates the separation of powers doctrine because the statute conflicts with rules of this court and, alternatively, even if it does not conflict with any supreme court rule, because it unduly encroaches upon the inherent powers of the judiciary.

This court has acknowledged that while it is clearly empowered to promulgate procedural rules to facilitate the exercise of judicial power, the legislature has, as the branch of government charged with the determination of public policy, the concurrent constitutional authority to enact complementary statutes. (*O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281; 107 Ill. 2d R. 1 (contemplating that the supreme court rules shall be read together with the Civil Practice Law and the Code of Criminal Procedure to complement one another).) Nonetheless, it is not within the legislature's power to enact statutes solely concerning court administration or the day-to-day business of the courts. (*People v. Joseph* (1986), 113 Ill. 2d 36, 42.) Were it otherwise, Illinois courts would be no more than a judicial arm of the legislature. Where, however, a legislative enactment expresses a public policy determination, having as its basis something other than the promotion of efficient judicial administration, our court has sought to reconcile conflicts between rules of the court and the statute. (*O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281; *People v. Flores* (1984), 104 Ill. 2d 40, 48-50.) Conversely, where such a legislative enactment directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority, the rule will prevail. *People v. Cox* (1980), 82 Ill. 2d 268, 274; *People v. Jackson* (1977), 69 Ill. 2d 252, 259.

The State's Attorney contends that section 114—5(a) conflicts with Supreme Court Rule 21(b), which provides in pertinent part: "The chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders providing for assignment of judges." 107 Ill. 2d R. 21(b).

Rule 21(b) gives effect to article VI, section 7(c), of our constitution (Ill. Const. 1970, art. VI, §7(c)), which vests general administrative authority in the chief judge

of each circuit, subject to the authority of this court. Rule 21(b) accords the chief judge the authority to enter general orders for the assignment of judges free from express legislative limitation. (*People v. Joseph* (1986), 113 Ill. 2d 36, 46.) At issue in *Joseph* was the constitutionality of section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8), which required that all post-conviction petitions be assigned to a circuit judge other than the one who presided at trial. We held that section 122—8 directly conflicted with a chief judge's authority under Rule 21(b) to enter general orders assigning judicial duties because it precluded, in all post-conviction proceedings, assignment to an entire class of circuit judges.

The State's Attorney points to no such conflict in the present case. The sole argument the State's Attorney musters is that the chief judge of the Sixth Judicial Circuit has availed himself of Rule 21(b), and has thus promulgated rules of court providing for assignment of cases. This contention is without merit. There is no basis in fact to the State's Attorney's assertion that the rules of the Sixth Judicial Circuit were established by its chief judge pursuant to our Rule 21(b). As the rules of that circuit plainly state, the authority for their promulgation is bottomed in section 1—104(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 1—104(b)), and our Rule 21(a), which provides, in part, that a majority of circuit judges in each circuit may adopt rules governing civil and criminal cases (107 Ill. 2d R. 21(a)).

Beyond the State's Attorney's apparent misconception of the authority for the promulgation of the rules of the Sixth Circuit, we observe that the State's Attorney does not suggest here that section 114—5(a) conflicts with any circuit rule. Nor does the State's Attorney argue that section 114—5(a) interferes with the authority of the chief judge to enter assignment orders. Most im-

portantly, unlike the statute held invalid in *Joseph*, section 114—5(a) does not attempt to preclude assignment to an entire class of judges or, for that matter, assignment to any single judge. The automatic-substitution-of-judge provision makes clear that its protections may be invoked only *after* assignment is made and then only "within 10 days after" the case has been placed on the trial calendar of the assigned judge. (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(a).) Thus, we are unable to say that section 114—5(a) conflicts with the judicial authority of assignment.

Although not a point relied upon in its brief, and one not available in the circuit court, we note that the State's Attorney claimed briefly at oral argument that section 114—5(a) conflicts with Supreme Court Rule 63(C). (107 Ill. 2d R. 63(C).) We find no merit in the State's Attorney's claim.

Part of our new Code of Judicial Conduct effective January 1, 1987, Rule 63(C) sets forth, without limitation, various relationships and instances in which a judge should disqualify himself. The State's Attorney has not called to our attention which, if any, subsections of Rule 63(C) would be in conflict with section 114—5(a). However, a reading of the rule shows that subsection (1)(a) is the only provision relevant to our consideration. That subsection provides in pertinent part: "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where (a) he has a personal bias or prejudice concerning a party or his lawyer ***." 107 Ill. 2d R. 63(C)(1)(a).

We cannot discern any conflict between section 114—5(a) and Rule 63(C)(1)(a). Rule 63(C)(1)(a) requires a judge to disqualify himself where his impartiality to a party or his lawyer might reasonably be questioned. As such, nothing in the rule precludes a judge from disquali-

fying himself pursuant to section 114—5(a). Section 114—5(a), like Rule 63(C)(1)(a), requires a judge to disqualify himself from a criminal proceeding in which his impartiality is disputed by a defendant. We conclude, therefore, that there is no conflict between section 114—5(a) and Rule 63(C)(1)(a).

The State's Attorney argues that even if section 114—5(a) does not conflict with any supreme court rule, it should be struck as an undue legislative encroachment upon the inherent powers of the judiciary. The State's Attorney observes that, when properly invoked, section 114—5(a) requires a judge to disqualify himself without putting to proof a movant's good-faith allegation of prejudice. It is the contention of the State's Attorney that the automatic-substitution-of-judge statute constitutes a legislative infringement on the duty of a trial court "to abide [by] its assignments" and "exercise its power to adjudicate a controversy before it." The short answer to this argument is that there is no express, inherent, or other power reposed in a judge to preside over a case or controversy in which his impartiality has been questioned. To hold otherwise would be to extinguish the very "spirit of our law, which demands that every case shall be fairly and impartially tried, and that where any serious question exists as to prejudice on the part of the judge he should not preside therein." *People v. Dieckman* (1949), 404 Ill. 161, 164.

Our conclusion that section 114—5(a) does not unduly encroach upon the inherent powers of the judiciary is strengthened further by this court's decision in *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53. In *Strukoff*, the court was faced with the question whether section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)), in requiring that a judge allow at least 48 hours between the two phases of a bifurcated divorce trial, violated the separa-

tion of powers clause. Like the instant case, no court rule was found to be in direct conflict with the challenged statute. Moreover, this court emphasized that there was no trespass upon judicial authority because divorce proceedings are wholly statutory in origin and the bifurcated trial provision was designed to define and implement a statutorily created remedy. *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60-62.

Like the bifurcated trial provision in *Strukoff*, the remedy of disqualification for litigants confronted with a judge who appears prejudiced is one that is entirely statutory in origin. Under Illinois common law, as was the case in many other States (*e.g., People v. Williams* (1864), 24 Cal. 31; *Wilson v. Rodewald* (1873), 49 Miss. 506), the prejudice of a judge was not a ground for judicial disqualification. In *People v. Scott* (1927), 326 Ill. 327, 341, this court observed that the right to substitute a judge for prejudice, then a procedure generally termed a "change of venue," did not exist at common law:

> "The authority to change the venue of either civil or criminal cases under appropriate circumstances existed at common law and became a part of our judicial system, but under the common law the bias or prejudice of the judge, either in a criminal case or in a civil case, was not such a disqualification as gave the parties a right to a change of venue. [Citations.] *Where, however, the legislature has undertaken to prescribe the cases wherein a change of venue may be had, its directions should be taken to be conclusive on the subject.*
>
> The legislature has prescribed the cases wherein a change of venue may be had in this State." (Emphasis added.)

Indeed, the quixotic common law notion that the cold neutrality of a judge could never yield to prejudice or bias has long been laid to rest. In 1874, the legislature cast free from its common law mooring the ill-conceived rule that a judge could not be disqualified for prejudice.

(See Ill. Rev. Stat. 1874, ch. 146, pars. 18 through 21.) Section 114—5(a), like its predecessors, effectuates the right to a fair trial—a right of constitutional dimension (*Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499)—by affording a defendant the substantive right to substitute a judge who appears to be prejudiced. The provision represents the considered public policy that a defendant should be able to avoid having his liberty, and perhaps even his life, hang in balance before a judge whose impartiality he in good faith questions. It does not express a policy that a defendant is entitled to have his case heard before the judge of his choice. We observe that because the right to a substitution of a judge who appears prejudiced is limited to the first 10 days after assignment, the State and defendants alike are accorded a supplementary right to challenge for cause the impartiality of a judge at any time during trial. Ill. Rev. Stat., 1986 Supp., ch. 38, par. 114—5(d).

For over a century, this court has been called upon to enforce the constitutional right of defendants to a trial before a fair and impartial judge by giving effect to the automatic-substitution-of-judge statute. (See *Carrow v. People* (1885), 113 Ill. 550 (reversing trial judge's denial of defendant's motion to substitute judge).) While the longevity of a statute is not in itself dispositive of a challenge to its validity under the separation of powers doctrine, the history of the statute and its interpretation by the courts are factors clearly relevant to the question whether the statute unconstitutionally interferes with judicial authority. That section 114—5(a) has enjoyed the complete acceptance of this court can hardly be doubted from our previous decisions. To fully implement the automatic-substitution-of-judge statute and thereby safeguard the basic right to a fair trial, this court has held in a long and unbroken line of cases that the provisions of the statute are to be construed liberally "to promote

rather than defeat" substitution, and that reversible error occurs where the statute is not so construed. (See, e.g., *People v. Smith* (1963), 28 Ill. 2d 445, 447; *People v. Kostos* (1961), 21 Ill. 2d 451, 454-55; *People v. Dieckman* (1949), 404 Ill. 161, 164; *People v. Scott* (1927), 326 Ill. 327, 341.) Viewed historically, then, it is clear that this court has considered the automatic-substitution-of-judge statute a legitimate and proper means to ensure a fair trial.

We are aware that in a smaller county served by only one or two circuit judges, the substitution of a judge may require that a circuit judge from a neighboring county be brought into the case. In noting that a substituting judge would have to set aside normal duties to accommodate the new assignment, the circuit judge in this case stated: "The time spent traveling to and from his home county to the county of assignment is simply lost." The progress of modern society robs this observation of whatever force it might once have had. Gone are the days when judges were required to "ride circuit," traveling from town to town to adjudicate disputes. The judge's lament may have held some force then, though obviously not enough to hinder or halt the diligent performance of judicial responsibilities. Not infrequently judges are still required to travel in the ordinary course of their official duties, whether by assignment to a specific case or not. But constitutional rights cannot and do not depend for their preservation upon a litmus test of convenience and expediency. The vindication of such rights often entails inconvenience for some. This is the small price paid for upholding the letter and spirit of our law.

Although no abuse of section 114—5(a) is shown on this record, we recognize that the statute, like any other that confers certain rights, may be invoked for purposes not related to its proper objective. Of course, the poten-

tiality for abuse of a statute by litigants is a matter quite different from a separation of powers violation. Be that as it may, we are nevertheless constrained to point out that our court has consistently held that a motion to substitute a judge is properly denied where it is apparent that the motion is brought for the purpose of delaying or avoiding trial. (*People v. Beamon* (1962), 24 Ill. 2d 562, 564; *People v. Stewart* (1960), 20 Ill. 2d 387, 391-92.) We continue to adhere to our position in those cases. We would add that a belief that a judge is likely to rule against a defendant based on either facts or circumstances unrelated to the judge's ability to sit impartially does not afford a proper basis for a claim of prejudice.

Finally, we note that our conclusion is in accord with the recent decisions of our sister State supreme courts upholding similar substitution-of-judge statutes over claimed separation of powers violations. See *State v. Holmes* (1982), 106 Wis. 2d 31, 315 N.W.2d 703; *Solberg v. Superior Court* (1977), 19 Cal. 3d 182, 561 P.2d 1148, 137 Cal. Rptr. 460; *Channel Flying, Inc. v. Bernhardt* (Alaska 1969), 451 P.2d 570; but see *Johnson v. Goldman* (1978), 94 Nev. 6, 575 P.2d 929.

For the reasons stated, we conclude that the State's Attorney has failed to carry his burden of establishing the invalidity of section 114—5(a) and hold that the statute neither conflicts with any rule of this court nor unduly invades the inherent authority of the judiciary. Accordingly, the judgment of the circuit court of Champaign County is reversed, and the cause remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE WARD, specially concurring:

While I concur in the disposition the majority makes, I concur also in Justice Miller's special concurrence. I would add that the requirement the majority seemingly

creates that in order to invoke the automatic-substitution-of-judge statute a movant, to use language of the majority, must reasonably question the impartiality of the judge or question it in good faith can only becloud the operation of the statute, which until now has been clear in this regard.

JUSTICE MILLER, also specially concurring:

I concur in the result reached by the majority in this case. I write separately, however, because I do not believe that the automatic-substitution provision contains the good-faith requirement that the majority refers to, and because I do not agree with the majority's statements suggesting that the provision is constitutionally required.

Section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1986 Supp., ch. 38, par. 114—5) contains two distinct provisions under which an accused may move for substitution of judge. Section 114—5(a), at issue here, is the so-called automatic-substitution provision; section 114—5(d), not at issue here, provides for motions for change of judge for cause. Section 114—5(a) permits an accused to move for substitution of judge "on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the case but shall transfer it to another judge not named in the motion." Thus, there is no hearing on the motion, and its allowance is automatic. The provision contains several significant restrictions: the motion must be made within 10 days of the time the cause is placed on the judge's trial call, and only one judge may be named as prejudiced under the provision, unless the defendant is charged with a Class X felony or an offense punishable by death or life imprisonment, in which case two judges may be named. Also, this court has held that the motion

must be made before the trial judge makes a substantive ruling in the case. *People v. Norcutt* (1970), 44 Ill. 2d 256, 262-63.

In sharp contrast, the provision for motions for cause, section 114—5(d), requires that a movant allege prejudice on the part of the judge and contemplates a hearing on the allegation. Section 114—5(d) provides:

"Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes. If the motion is allowed, the case shall be assigned to a judge not named in the motion. If the motion is denied the case shall be assigned back to the judge named in the motion." (Ill. Rev. Stat., 1986 Supp., ch. 38, par. 114—5(d).)

A motion for cause may be made "at any time," and there is no limit on the number of motions that may be made under that provision.

In my view, the automatic-substitution provision, section 114—5(a), purports to grant an accused a right to substitution without regard to the good faith of the motion. By its plain terms the statute provides, "Upon the filing of such a motion the court shall proceed no further in the case but shall transfer it to another judge not named in the motion." That language would appear to admit no inquiry into the good faith or bad faith of an assertion of prejudice, and therefore I question the statements in the majority opinion implying that a motion for automatic substitution of judge must be made in good faith. The source of that requirement appears to be cases decided under earlier, different statutes; I note that we are not faced with the question whether the current provision contains a requirement of good faith.

The majority opinion also suggests that the automatic-substitution provision is constitutionally required.

(119 Ill. 2d at 481.) I disagree. It is the provision allowing motions for cause, section 114—5(d), that more directly effectuates the right of an accused to be tried before an impartial judge. Consistent with that role, section 114—5(d) contains none of the restrictions on the timing or frequency of the motion that apply to motions for automatic substitution. The majority purports to find a constitutional purpose for both provisions, however, and in doing so confuses the two.

Finally, I wish to emphasize that a relevant consideration in our analysis of section 114—5(a) under the separation of powers principle is the longevity of the practice under attack. As the majority opinion demonstrates, the current provision or its predecessors have been enforced by this court for more than a century. During that time the court has been receptive to the substitution provisions, construing them liberally. Thus, I believe that the principles reflected in the statute have become so interwoven with the law of this State, including the opinions of this court, that they should be enforced as accepted by the courts even though there may be some infringement on the powers of the judicial branch.

JUSTICE SIMON joins in this special concurrence.