DAVID NEENAN, Admr., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE STORMCOTE ROOFING CORPORATION, Plaintiff in Error.)

*Opinion filed February 24, 1928.*

1. WORKMEN'S COMPENSATION—*claim under section 24 must be made by party or his agent.* The claim for compensation required to be made within six months under section 24 of the Compensation act must be made by the party entitled to the compensation, or by or through some person who is authorized, as agent or attorney of such party, to make such demand, and a demand made by one who is purely a volunteer is not such a demand as can be recognized as legal and binding.

2. SAME—*when claim is sufficiently made by agent or attorney within six months.* The claim for compensation which section 24 of the Compensation act requires to be made within six months is sufficient when made by an attorney within the required time, although the attorney, because the claimant lived in a foreign country, was not expressly authorized by the claimant to present the claim before he did so, where the action of the attorney was ratified by the claimant, though the ratification was not received until after the six months had expired and after the hearing before the arbitrator.

3. SAME—*when finding of total dependency is not justified.* A finding that a mother was totally dependent on the earnings of her

deceased son is not supported by the record where the evidence shows that the contributions which the deceased sent to his mother, who lived in a foreign country, were taken from a fund to which another son, still living, also contributed.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. L. E. BERNREUTER, Judge, presiding.

THOMAS C. ANGERSTEIN, and G. A. BRUEGGER, (GEORGE W. ANGERSTEIN, of counsel,) for plaintiff in error.

D. E. KEEFE, and H. GRADY VIEN, (KEEFE, BAXTER, MILLER & BAKER, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

James O'Rorke while working in the course of his employment and in the line of his duty for plaintiff in error, the Stormcote Roofing Corporation, was instantly killed by electrocution April 14, 1924. He was twenty-five years of age, single, and his average annual earnings were $1248. He left surviving him his brother, Patrick O'Rorke, who was twenty-one years of age and resided with him in East St. Louis, Illinois, and his mother, Margaret O'Rorke, who resided in Belfast, Ireland, and was about the age of sixty years. Defendant in error, David Neenan, was appointed administrator of the estate of the deceased on December 10, 1924, and two days after his appointment as administrator filed a petition under the Workmen's Compensation act with the Industrial Commission claiming compensation for the mother for the deceased's death and that she was dependent on him for support at and before his death. The decision of the arbitrator, which was confirmed by the Industrial Commission, was, that defendant in error is not entitled to compensation because of his failure to make a demand for compensation within six months after the accident. A writ of *certiorari* was sued out of the circuit court of St. Clair county, and on review the decision of the Industrial Com-

329—4

mission was set aside and judgment was entered by the circuit court finding that the employer had notice of the accident within thirty days after it happened, that demand for compensation was made upon the employer within six months after the accident, and that the mother of the deceased was totally dependent upon him for support at the time of his death, and defendant in error was awarded compensation in the total amount of $3600. A writ of error has been allowed by this court to review the record.

In June, 1924, Saul, Ewing, Remick & Porter, a firm of lawyers in Philadelphia, sent a letter, with some memoranda relating to the death of James O'Rorke, to Lehmann & Lehmann, a firm of lawyers in St. Louis, Mo., who upon receipt of the letter and memoranda forwarded them to the law firm of Keefe, Baxter & Miller, at East St. Louis. After the receipt of this letter, D. E. Keefe, of the last mentioned law firm, got in touch with Patrick O'Rorke, the surviving brother of the deceased, and conferred with him about obtaining compensation for his mother on account of the death of James. In pursuance of the communication from the Philadelphia lawyers and the conversation with the brother of the deceased, Keefe on August 11, 1924, wrote a letter to plaintiff in error, in which he stated the facts concerning the death of James while in its employ, and suggested that he would like to discuss the matter of compensation for the mother of the deceased (who lived in Belfast, Ireland,) with a representative of plaintiff in error or the company in which it carried insurance. He also stated that if he did not hear from plaintiff in error within a reasonable time he would take it that the question of settlement would not be entertained by it and would file a petition for compensation under the Workmen's Compensation act. Keefe saw the manager of plaintiff in error, who told him the matter was in the hands of the insurance company. The insurance company wrote Keefe advising him that its representative would call upon him for the

purpose of discussing the question of settlement or payment of compensation, and Keefe afterwards met and discussed the matter with the representative of the insurance company but no settlement was reached, as the insurance company contended that the deceased and his brother both contributed to their mother's support. On September 26, 1924, Keefe served a formal demand for compensation upon plaintiff in error. The demand was signed, "Margaret O'Rorke, by D. E. Keefe, H. G. Miller, her attorneys."

On the hearing before the arbitrator it was stipulated that the parties were working under and subject to the provisions of the Workmen's Compensation act; that the accidental injuries which caused the death of the deceased arose out of and in the course of his employment by plaintiff in error; that notice of the accident was given plaintiff in error as required by law, and that the annual earnings of the deceased were $1248.

The issues presented at the hearing before the arbitrator were, (1) whether there had been a legal demand for compensation within the statutory period, as required by section 24 of the act; and (2) whether or not the mother was totally dependent for support on her son at his death.

On the question of the authority of Keefe to make demand for compensation for the mother of the deceased as her attorney, her son, Patrick O'Rorke, testified substantially as follows: He lives in East St. Louis and was living with his brother there at the time of his death. About one month after the death of his brother he made arrangements with Keefe, of East St. Louis, to represent his mother as her attorney. His mother was living in Belfast, Ireland, at that time and is still living there. He has corresponded with his mother since his brother's death and advised her that Keefe was representing her as her attorney. On being asked if he had kept any letter that would show Keefe's power of attorney to handle this case, he stated that

his mother wrote him that a lawyer in East St. Louis was handling the case. "She give it in Belfast, Ireland, and they give it right in East St. Louis." On being asked if he knew whether Keefe got power of attorney, duly authenticated, for him to make claim for compensation, he answered that he never saw it. The reason that he made arrangements with Keefe to act as his mother's lawyer was that Keefe got the power to act for her from her. Keefe told him that he got word about acting for her and that he was representing her.

D. E. Keefe was called as a witness by plaintiff in error to testify as to his authority to represent Margaret O'Rorke as attorney in this case, and testified before the arbitrator substantially as follows: He prepared in his office the demand for compensation upon plaintiff in error, served September 26, 1925, and signed thereto the name of Margaret O'Rorke, by him as her attorney. He obtained his authority in June, 1924, to act as such attorney from the firm of lawyers in Philadelphia who sent him the information they had about the case. The name of one of the Philadelphia lawyers was Porter, who stated that he had a brother in Belfast who had asked them to take steps under the Illinois law to secure compensation for Mrs. O'Rorke, the mother. Keefe did not know what authority Porter had to ask the witness to take charge of the case except as above stated. David Neenan, a friend of the deceased, and Patrick O'Rorke, the brother of the deceased, came to his office to see him in regard to the case, and thereafter, at his suggestion, Neenan was appointed administrator of the deceased, and he, the witness, and Patrick O'Rorke, signed the petition for letters of administration. Keefe testified before the Industrial Commission that he received the power of attorney from Mrs. O'Rorke, executed in Ireland by her, December 29, 1924. He had requested this power of attorney previous to the time he received it but did not actually receive it until after the hearing before the arbitrator.

He received it from Mrs. O'Rorke through Fisken Porter, an attorney at Belfast. This power of attorney, which is in evidence, recites the fact of the death of James O'Rorke in East St. Louis on April 14, 1924, and that Mrs. O'Rorke is the mother and next of kin of the deceased, and by that instrument she appoints Keefe as her attorney, to represent and to act for her in her name in all matters, and authorizes him to carry on or defend, at law or in equity, any suit or proceeding touching her interest, and to demand, sue for and force payment against the Stormcote Roofing Corporation under any claim she may have against it, the same as she could do in relation to the same, and to give a good receipt or discharge for her claim as effectually as if she were present, etc. By this power of attorney she ratifies and confirms whatsoever her attorney or his attorneys have done theretofore or may do touching the matters aforesaid. The evidence in the record further shows that Keefe was of the opinion, from his information, that plaintiff in error had not complied with the Workmen's Compensation act. He was contemplating the institution of a suit at law for damages to the next of kin of the deceased under the Injuries act of 1853, and he in substance so advised the insurance company in a letter under date of October 16, 1924, and that he would delay filing a declaration until October 30, for the purpose of determining if the matter might be settled by the interested parties. On October 20, 1924, he received a letter from the American Mutual Liability Insurance Company advising him that plaintiff in error was under the Compensation act.

On the question of the dependency of the mother upon the deceased for support at and previous to his death, Patrick O'Rorke testified as follows: The deceased came to this country in 1921. Patrick was then twenty-one years old. Patrick and his mother came to this country together in 1923. The deceased contributed to the support of his mother in Ireland before he came to this country, during

which time he was working as street car conductor for about four pounds a week. After she and Patrick came to this country they and the deceased lived with Mrs. Clark in East St. Louis for about six months, during which time the deceased contributed to her support. She returned to Ireland about June, 1923. The deceased paid the expenses of her return trip to Ireland. After that the deceased sent her about $100. The witness remembers that the deceased first sent her $25 and later two remittances of eleven pounds each. During that time the deceased was working for $24 a week. The deceased was all that his mother had to depend upon for support. His mother's husband died about March, 1923, leaving no estate, and he never contributed to her support. His mother is now living with neighbors in Ireland. The witness began working for the Stormcote Roofing Corporation in April, 1924. Before that he worked for a year and a half at the Hamilton-Brown shoe factory for $10 a week. After his mother returned to Ireland he and his brother rented a house in East St. Louis, where they lived together and did their own housekeeping and paid $12 a month for house rent.

Mrs. Clark testified that she lived in East St. Louis and had known the deceased and his mother for seven or eight years. She lived with Mrs. O'Rorke in the same house in Belfast. She came to this country six years ago, and when she knew Mrs. O'Rorke in Ireland she was not living with her husband. Her son James was her main support. Mrs. O'Rorke and her two sons boarded with the witness in East St. Louis for about six months in 1923. James paid her the board for all three of them. After Mrs. O'Rorke left her place, and while she was in this country, James gave her $15 or $20 every two weeks and gave her $100 when she left for Ireland. She saw him put money in letters and mail them to his mother in Ireland two or three times.

Frank J. Shay testified that he is assistant cashier at the Union Trust Company and that James O'Rorke pur-

chased from him two drafts and sent them to his mother at Belfast, one on September 15, 1923, for $50.94, the other on October 29, 1923, for $51. The cashier of that trust company, Dewey Leming, testified that James had a savings account with the company and that there was a withdrawal of $100 by James from that account on June 23, 1923, and that there were other withdrawals. He did not know what James did with any of the money.

Hugh Sharp, adjuster for the American Mutual Liability Insurance Company, testified that he had a conversation with Patrick O'Rorke within a day or two after the death of his brother, James, in which Patrick told him that he and James both worked; that he turned his earnings over to James; that James paid their board out of the combined earnings; that out of the combined earnings James sent their mother $10 per week, and that James was the one that took care of sending the money because he understood that better.

Section 24 of the Workmen's Compensation act provides that no proceedings for compensation under the act shall be maintained unless claim for compensation has been made within six months after the accident. This court has construed the foregoing section as providing that the claim for compensation must be made by the party entitled to the compensation, or by or through some person who is authorized, as the agent or attorney of such party, to make such demand, (*Heinze* v. *Industrial Com.* 288 Ill. 342,) and that a demand made by one who is purely a volunteer is not such a demand as can be recognized as legal and binding. (*Northwestern Malt Co.* v. *Industrial Com.* 313 Ill. 534.) In the *Malt Co. case,* Mrs. Korys, who made demand upon the malt company, was purely a volunteer, in no way related to the deceased and not interested in any way except in the matter of collecting the funeral expenses, which she informed the company she had helped to pay and

which the company assured her it would pay. It is true that she asked the company what the wife and child of the deceased would get. The proof did not show that she had any authority from the wife and child, who were in a foreign country, to make demand for them. It is the claim of plaintiff in error that Keefe was merely a volunteer in making demand for compensation in this case. We do not think that the evidence in this record warrants that conclusion. The proof shows that he obtained his authority from the mother through Fisken Porter, an attorney or solicitor of Belfast, Ireland, and the Philadelphia and St. Louis attorneys, and that Porter, one of the Philadelphia attorneys, informed him that his brother in Belfast had asked them to take steps under the Illinois law to secure compensation for the mother. Keefe finally received the power of attorney executed by the mother from Porter in Ireland, who authorized the Philadelphia lawyers to act for her and who is shown to be an attorney or solicitor for her by the endorsement on the power of attorney. Her son Patrick interested himself for his mother and asked Keefe to represent her, and informed him, in substance, that his mother had written him Keefe was her attorney. The power of attorney which the mother sent to Keefe through her solicitor, Fisken Porter, not only gave him full power to act for her and in her name and stead concerning the matter of her claim, but she expressly by that instrument ratified everything that Keefe had done concerning the matter and everything that he might thereafter do. It is an established rule of law, as stated in 21 R. C. L. (sec. 99, p. 919,) that "if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as an agent of the latter, even though without any precedent whatever, if the person in whose name the act was performed subsequently ratified or adopted what has been done, then the ratification relates back and supplies the

original authority to do the act." This court has recognized this same rule of law in the case of *Hefner* v. *Vandolah,* 62 Ill. 483, and cites Story on Agency as authority for the rule.

The Supreme Court of Michigan affirmed the action of the Industrial Board in allowing compensation in the case of *Matwiczuk* v. *American Car and Foundry Co.* 155 N. W. 412, on a state of facts substantially on all-fours with this case. The court in that case held that although the party who gave notice to the company of the accident and the death of the deceased and who made demand for the widow of the deceased, who resided in Poland, without her knowledge or authority, such notice and demand were legal because ratified by the widow by the execution of a power of attorney authorizing the acts of the party acting for her. The power of attorney in that case did not reach the party making demand for the widow until after the time for demand had expired. The Michigan statute under which demand was made is substantially the same as ours, and provides: "No proceedings for compensation for an injury under this act shall be maintained unless a notice of the injury shall have been given to the employer three months after the happening thereof, and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same." We agree with the statement of the Michigan court in that case, which is substantially to the effect that it is too technical to say that a notice and claim made within the time prescribed by the statute in behalf of the dependent, who could not make the claim herself because of the distance she lived from the place of the accident, and which action was ratified by her on being advised of the situation, must fail because the ratification did not reach this country within six months from the time of the accident, and that to so hold would not be according to the letter or the spirit of the Workmen's Compensation act.

It is clear from the evidence in this record that Margaret O'Rorke was dependent upon the deceased for her support and maintenance, and that the deceased and her son Patrick supported and maintained her at and for a considerable time before the death of her son James. It is also clear that James must have furnished the greater amount of such support and maintenance. The evidence shows that Patrick was only earning $10 a week in wages previous to the time of James' death and that James during that time was earning $24 a week and had a savings account in the bank. The two brothers paid $12 a month for house rent, and Patrick could not have had much left out of his earnings after paying his house rent and other living expenses, as he had no property or other income. We also think that the evidence of Mrs. Clark and Hugh Sharp shows that the wages of the two sons were placed in the hands of James as a common fund out of which the mother was supported and the rent and other living expenses of the two sons were paid, and that the weight of the evidence shows that Patrick contributed, in some small degree at least, to the support of his mother. The court therefore erred in holding that the mother was totally dependent upon James for her support and maintenance at and previous to the time of his death.

The judgment of the circuit court is reversed, the order of the Industrial Commission is set aside and the cause is remanded to the Industrial Commission, with directions to hear any further evidence that the parties may offer bearing upon the question of the amount of award to be fixed under paragraph (*b*) or (*c*) of section 7 of the Workmen's Compensation act, and to fix the amount of the compensation in accordance with the evidence.

*Reversed and remanded, with directions.*