(No. 47714

THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Petitioner, v. DANIEL A. COVELLI, Judge, *et al.*, Respondents.

*Opinion filed September 26, 1975.*

WARD, J., and UNDERWOOD, C.J., dissenting in part.

Bernard Carey, State's Attorney, of Chicago (Barry Gross, Special Assistant State's Attorney, Henry A. Hauser, Donald P. Smith, and David A. Novoselsky, Assistant State's Attorneys, of counsel), for petitioner.

Patrick A. Tuite, of Chicago, and Dominic P. Gentile, of Barrington, for respondents.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The controversy in this case centers upon an order entered by the Honorable Daniel A. Covelli, a judge of the circuit court of Cook County, directing the return of property seized under a search warrant issued by another judge of the same court, the Honorable John F. Hechinger.

We granted leave to the State's Attorney of Cook County to file an original petition for *mandamus* and prohibition directed to Judge Covelli, stayed the enforcement of his order, and closed the issues upon the petition and the respondents' suggestions in opposition, which were allowed to stand as a motion to dismiss. An accelerated briefing schedule was fixed, briefs were filed, and oral argument was heard. At the conclusion of the argument this court ordered that a writ of *mandamus* issue directing Judge Covelli to expunge his order and to dismiss the complaint in the case that had been before him. The order was entered "without prejudice to the application for the entry of an appropriate protective order under the provisions of section 108—11 of the Code of Criminal Procedure."

This opinion explains the reasons for that order. The underlying facts are as follows:

The complaint for the search warrant was signed and sworn to by an investigator for the office of the State's Attorney of Cook County. He based the statements in the complaint upon his own personal knowledge, interviews with persons named in the affidavit, and official police department reports. The complaint stated that on June 19, 1975, at approximately 11:10 p.m., the body of Sam Giancana was found in the basement of his home in Oak Park, Illinois. The body was discovered by a man who described himself as the caretaker for the deceased and the home of the deceased. The caretaker and his wife lived in the house of the deceased, and the caretaker had talked to the deceased about 10:45 p.m., and at that time the deceased told him that if he needed anything he would let him know. The body was found in the kitchen area of the basement, which contains a bathroom, a laundry room, a conference-dining room and a room described as the private room of the deceased.

The body contained seven bullet wounds in the head and neck area. The shots had been fired at close range. In his slacks, which were unbuttoned at the top, $1,400 was found. His wallet was found on the floor between his left hand and his head. Several pieces of sausage and greens were cooking on the stove when the body was found. The chair at the head of the table in the "conference-dining area" was pulled away from the table. A bottle of Tab and a glass were in front of that chair. The chair directly to the right was also pulled away, and an ashtray containing a cigar was in front of that chair.

The complaint recited that the entire basement was searched, with the exception of a locked desk located in what was described as the deceased's private

room, and a three-drawer filing cabinet in the utility room or closet. The caretaker stated that all of the deceased's important things were kept in his private room, and more specifically in the locked desk. He also stated that the deceased was the only one who had a key to that locked desk. The key was not found. The three-drawer filing cabinet contained a combination safe in one of the drawer areas which was also locked.

A recording device capable of recording both personal and telephone conversations was also found. There was a cassette tape on the recording machine which contained conversations recorded on different dates and at different times. No other similar cassettes were found in the basement.

On the basis of these facts the affiant stated his belief that the person or persons who killed Giancana were known to him and were permitted entry into the basement by him; that after the homicide they looked for "objects, documents and other articles." The place where the wallet was found indicated that the killer or killers had looked through the wallet himself or that Giancana had handed it to him. The killer may have intended to or, in fact, did go into Giancana's private room or locked filing cabinet located in the utility room to look for objects, documents or other articles. The affiant alleged that it is likely that the offender intended to enter the desk, and that it is also likely that the objects, documents and other articles for which the murderer was searching may still be located in the desk or filing cabinet and that other recording cassettes may also be contained in the desk or cabinet or other parts of the house.

The complaint therefore prayed for the issuance of a search warrant for the desk, the locked filing cabinet, the safe and its contents, the recording machine and any and all cassettes capable of recording

in that machine located at the residence of the deceased. The search warrant was issued on June 24, 1975, at 3:45 p.m. by the Honorable John F. Hechinger. It authorized the search and seizure of the documents and things requested in the complaint for the warrant.

On June 25, 1975, a "complaint in Chancery" was filed by three daughters of the deceased (hereinafter referred to as the daughters). The complaint alleged the issuance of the warrant and that the items described in the warrant were seized on June 24, 1975. It also alleged that those items "contained personal papers, documents and other tangible possessions belonging to the Plaintiffs and that the same are neither contraband, nor the fruits or instrumentalities of a crime and are capable of lawful possession and are in fact, lawfully possessed by the Plaintiffs." It alleged further that the complaint for the search warrant was legally insufficient to support a finding of probable cause and that the items seized pursuant to that warrant were therefore being held unlawfully. It charged that the unlawful search and seizure violated the rights of the plaintiffs under the fourth and fourteenth amendments to the Constitution of the United States and also under sections 2, 6 and 12 of article I of the Constitution of Illinois.

The complaint alleged the absence of an adequate remedy at law because of the impossibility of assessing monetary damages and the lack of a forum in which to move to quash the warrant and "suppress said evidence and return the same" because there is no criminal or civil proceeding pending against the daughters. It also alleged that the defendants, the State's Attorney and the Director of the Illinois Bureau of Investigation, intended to enter the locked filing cabinet and desk and remove personal papers and documents contained therein regardless of the

right of privacy of the daughters and regardless of the absence of probable cause to believe that the contents thereof are evidence of a crime. The complaint therefore prayed for an order enjoining the defendants from violation of the constitutional and civil rights of the daughters and that the court order the property returned to them forthwith.

On June 25, 1975, the daughters presented to the Honorable Daniel A. Covelli, a judge of the circuit court of Cook County, their motion for a temporary restraining order. An order was entered restraining the defendants or any one acting under their direction or control, from "inspecting, reviewing, listening to, opening, or otherwise exerting control over the property contained in and/or the information on articles seized pursuant to" the search warrant until further order of the court. The defendants were granted leave to answer if they saw fit on or before July 2, 1975, and the matter was set for hearing on that date at 11 a.m.

Thereafter the State's Attorney moved for the entry of an order dissolving the temporary restraining order on the ground that legal title to the property of the deceased would rest in his executor or administrator and that the daughters therefore lacked standing to maintain their action. The motion stated that the warrant was issued, the premises were searched and the property was seized for the purpose of obtaining evidence concerning the murder of Sam Giancana. It asserted that legal title to the property of the deceased would vest in his executor or administrator and that therefore the daughters lacked standing to maintain an action in equity. (It is now undisputed that one of the daughters is the administrator of his estate.) The motion attacked the complaint on the grounds that its key allegations were legal conclusions and that the plaintiffs had an

adequate remedy at law by way of an action in replevin or a motion to quash the search warrant. It alleged that after the temporary restraining order had been issued by Judge Covelli, the daughters had appeared before Judge Hechinger "and filed a petition *** seeking to examine the contents of the property seized" and that appropriate relief had been granted. The petition to dissolve also asserted that the restraining order would hamper the investigation of the homicide of Giancana and was contrary to the public interest.

Memoranda of law were submitted to Judge Covelli, and on July 16, 1975, he entered the following order:

"The motion of the defendants to dissolve the temporary restraining order heretofore entered by this Court is hereby denied.

It is hereby ordered that all property seized under a search warrant executed at 1147 S. Wenonah, Oak Park, Ill. on June 24, 1975 is to be returned *forthwith* to the plaintiffs. This order includes all copies and photographs made of such property.

A motion of the defendants to stay this order is denied."

The respondents in the original action now before this court—Judge Covelli and the daughters of the deceased—challenge the propriety of the relief sought. They assert that the original writs of *mandamus* and prohibition should not be employed as substitutes for an appeal, and they point out that a remedy by appeal was available in this case. We agree that a remedy by way of appeal was available to the State's Attorney; it would have been, in our opinion, no less expeditious than the remedy by original action, for the appeal could have been readily expedited under Rule 302(b). Moreover, an appeal would avoid the possible intrusion of an issue of fact. See Rule 381.

In this case, however, the issues presented are novel,

and they appear to be of considerable importance to the administration of justice. In *People v. Sears* (1971), 49 Ill.2d 14, 33, we reiterated that: "This court, however, charged with the supervisory and administrative powers and duties provided in the constitution, may, when appropriate, award these writs [*mandamus* and prohibition] even though all of the normal criteria are not present." See also *People ex rel. Sears v. Romiti* (1971), 50 Ill.2d 51, 55; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill.2d 180, 192; *People ex rel. Continental Air Transport Co. v. Strouse* (1969), 41 Ill.2d 567, 570; *People ex rel. Terry v. Fisher* (1957), 12 Ill.2d 231.

Moreover, in this case as in *People ex rel. MacMillian v. Napoli* (1966), 35 Ill.2d 80, and *People ex rel. East Side Levee and Sanitary District v. Madison County Levee and Sanitary District* (1973), 54 Ill.2d 442, there is involved a conflict with respect to the same subject matter between judges of coordinate authority, which "can only serve to diminish public respect for the judicial system of this State." (54 Ill.2d 442, 445.) For these reasons, we decided that the remedy by way of original action rather than appeal was not improper in the present situation.

On the merits, the respondents would justify the exercise of equitable jurisdiction by Judge Covelli upon the ground that the daughters of the deceased had no adequate common law or statutory remedy by which they could challenge a search which, in their opinion, was based upon a complaint that failed to show probable cause. They say:

"*** A writ of replevin could not have prevented the State's Attorney of Cook County or agents of the Illinois Bureau of Investigation from intruding into the filing cabinet and possibly disseminating the private information therein to others, including the news media."

And again:

"*** What good are damages after the State goes through private letters and papers and wedding invitation

lists of the respondents and they somehow mysteriously become printed in the news media?"

The respondents also point to the language of section 114—12(a) of the Code of Criminal Procedure of 1963.

"A defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence anything so obtained ***." (Ill. Rev. Stat. 1973, ch. 38, par. 114—12.)

And since there are no "defendants" in the present case, they conclude that section 114—12 is inapplicable. On the basis of this analysis, they assert that in the absence of a legal remedy they were justified in resorting to equity to protect their property and their privacy.

In their analysis of the remedies available to them, however, the daughters have failed to consider article 108 of the Code of Criminal Procedure, which relates to the issuance of search warrants, their execution, the return of the things seized and the disposition of those things. Sections 108—10 and 108—11 are as follows:

"108—10. Return to Court of Things Seized. A return of all instruments, articles or things seized shall be made without unnecessary delay before the judge issuing the warrant or before any judge named in the warrant or before any court of competent jurisdiction. An inventory of any instruments, articles or things seized shall be filed with the return and signed under oath by the officer or person executing the warrant. The judge shall upon request deliver a copy of the inventory to the person from whom or from whose premises the instruments, articles or things were taken and to the applicant for the warrant.

108—11. Disposition of Things Seized. The judge or court before whom the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings." (Ill. Rev. Stat. 1973, ch. 38, pars. 108—10, 108—11.)

As we pointed out in *People v. Canaday* (1971), 49 Ill.2d 416, 423, section 108—11 does not prevent the court from releasing property seized under a search warrant to the owners or to those persons entitled to possession. Indeed,

it appears that some relief of this kind was actually granted to the daughters in an order entered by Judge Hechinger after Judge Covelli had entered his temporary restraining order.

We hold that the remedy of the daughters under section 108—11 is adequate to protect their interests in property and privacy. It was therefore error to interfere with the statutory remedy governing the return of the warrant and the disposition of the things seized under it. For these reasons, we directed the issuance of a writ of *mandamus* commanding Judge Covelli to expunge his order and to dismiss the complaint which was pending before him.

A further word is necessary to explain the reference in our order of August 12, 1975, to "an appropriate protective order under the provisions of section 108—11 of the Code of Criminal Procedure." The basic contention of the respondents is that the search warrant was issued without probable cause and was therefore invalid. In our opinion this contention is unsound. Analysis of the existence or nonexistence of probable cause begins with a consideration of the nature of the proceeding for which the evidence is sought. (See *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090.) As we pointed out in *People v. Allen* (1951), 410 Ill. 508, 514, "*** what the constitutions prohibit is not all searches and seizures, but only those which are unreasonable. (*People v. Reid*, 336 Ill. 421; *Wilson v. United States*, 221 U.S. 361.) The reasonable scope of an investigation depends upon what is being investigated."

In this case what is being investigated is a murder. It is true that there is no criminal action pending, but that means only that questions of materiality and relevance must be tested by a standard which is broader than that which is available when the issues have been delineated by pleadings in a civil case or by indictment and plea in a criminal case.

What is actually sought to be examined by the prosecutor is not described with particularity in the complaint or the warrant. It is not the desk or the safe in which the prosecutor is interested; it is their contents. The question then becomes whether or not it is reasonable for the prosecutor to examine those contents when the circumstances indicate that the deceased has been killed by someone known to him who was familiar with his personal affairs and his way of life, and who, as the complaint for the warrant states, was apparently looking for something. The absence of a specific description of those articles or documents that may provide clues as to the identity of the murderer or the reasons for the murder does not mean that the concern of the law for the punishment of criminals must be sacrificed. Nor does it mean that the concern of the law for the privacy of the administratrix and the other daughters of the deceased must be disregarded. The remedy provided by section 108—11 is adequate to accommodate both interests.

Rights of privacy may be protected by an *in camera* examination before the judge. Any questions of relevance or privilege that may arise with respect to particular items will be decided by the judge in making his determination as to whether or not the item is to be returned. As in the case of a search accompanying an arrest, items which afford evidence of the commission of other crimes may be retained. See *Harris v. United States* (1947), 331 U.S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098.

For the reasons stated in this opinion, we entered the order of August 12, 1975, directing the issuance of the writ of *mandamus*.

*Writ awarded.*

MR. JUSTICE WARD, with whom MR. CHIEF JUSTICE UNDERWOOD joins, dissenting in part:

Mr. Chief Justice Underwood and I agree that Judge Covelli erred in entertaining the complaint of the daugh-

ters of the decedent and in ordering that the property seized under the search warrant was "to be returned (sic!) forthwith" to them. But we dissent from the conclusion that under section 108—11 (Ill. Rev. Stat. 1973, ch. 38, par. 108—11) the judge after the making of a return following an evidentiary search can and should enter into the investigation of an unsolved crime and decide for the police and prosecutor what materials obtained in their search will be relevant, and material as well, in their investigation of the crime, and determine what materials should be turned over to persons who claim violations of privacy.

The majority states in part: "Rights of privacy may be protected by an *in camera* examination before the judge. Any questions of relevance or privilege that may arise with respect to particular items will be decided by the judge in making his determination as to whether or not the item is to be returned." No authority is cited to support this imposition of a responsibility trial courts will find impossible to discharge intelligently, and no authority is given to justify the intrusion upon investigative and prosecutive functions. The above direction to trial judges is summarily and unhesitatingly given, but we anticipate it will cause severe problems for those who must give it effect. There is no explanation of how the judge in the course of the investigation of an unsolved crime will be in a position to make an informed judgment as to what materials obtained by the authorities are relevant and material, including materials which appear to be irrelevant, for example, a letter or photograph, but which if developed through investigation will prove to be important evidence.

We consider that the legislature never contemplated that section 108—11 could be invoked to secure an adjudication of the character the majority orders. The section prescribes that the judge before whom material seized under a search warrant has been returned shall

provide for their custody pending further proceedings.

*People v. Canaday,* 49 Ill.2d 416, does not provide authority for the use the majority would make of section 108—11. *Canaday* simply involved a rejection of a claim by defendants that due process was violated when the trial judge prior to trial ordered the return to the owner of some of the stolen television sets which had been seized from the defendants, who were convicted of theft and burglary. The return to owners by the court or prosecutor of all but a sample quantity of goods recovered (or all in the instance of perishable goods) is routine.