(No. 51775.–

THE PEOPLE *ex rel.* ROBERT J. BIER, State's Attorney, *et al.,* Petitioners, v. RICHARD F. SCHOLZ, JR., Judge, Respondent.

*Opinion filed September 19, 1979.*

Original petition for *mandamus*.

Robert J. Bier, State's Attorney, of Quincy, for petitioners.

William J. Scott, Attorney General, of Springfield (Kenneth G. Anspach, Assistant Attorney General, of counsel), for respondent.

William J. Harte, Ltd., of Chicago, for *amicus curiae* Illinois Judges Association.

MR. JUSTICE WARD delivered the opinion of the court:

The chief judge of the Eighth Judicial Circuit of Illinois, Richard F. Scholz, Jr., the respondent, entered an administrative order on February 7, 1979, which, *inter alia,* provided for annual salaries of $18,000 for the chief probation officer of Adams County and $15,000 for the superintendent of the Adams County Youth Home, commencing on January 1, 1979. These amounts corresponded to the respective salaries the respondent suggested in a proposed budget submitted to the Adams County Board of Supervisors (the Board) on July 31, 1978, but were in excess of the amounts actually appropriated by the Board in its "Annual Appropriation

Ordinance" on. November 28, 1978. The Board's enactment provided for salaries of $16,500 for the chief probation officer and $14,850 for the superintendent. We allowed a motion by the State's Attorney of Adams County and by the Board for leave to file a petition for a writ of *mandamus* to direct the respondent to expunge those portions of the administrative order which set the salaries as above described. (58 Ill. 2d R. 381(a).) The Illinios Judges Association and the Illinois Probation and Court Services Association were each given leave to file a brief *amicus curiae.*

We must reject the first contention of the respondent that *mandamus* will not lie "to compel the undoing of an act." This court in *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, awarded a writ of *mandamus* directing a judge of the circuit court of Cook County to expunge an order directing the return of property seized under a search warrant issued by another judge of that court. (See also *People ex rel. Carey v. White* (1976), 65 Ill. 2d 193; *People ex rel. Hanrahan v. Felt* (1971), 48 Ill. 2d 171; *People ex rel. Sears v. Romiti* (1971), 50 Ill. 2d 51.) It is also argued by the respondent that the proper method for seeking review is by way of appeal from the respondent's order rather than through an original action. It is true that appeal is the normal avenue of review, but under circumstances of importance to the administration of justice this court in its administrative and supervisory capacity may consider the issuance of a writ of *mandamus* though all of the normal criteria for the writ's issuance do not appear. (*E.g., People ex rel. Carey v. White* (1976), 65 Ill. 2d 193, 197; *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 400-01; *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, 356; *People ex rel. Hanrahan v. Felt* (1971), 48 Ill. 2d 171, 174; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 192.) We consider that a question of sufficient importance to the administration of justice is

presented here for us to consider whether *mandamus* should issue.

The petitioners contend that constitutional and statutory provisions give the Board the authority and responsibility of setting the salaries involved:

> "The salaries of clerks and other non-judicial officers [of the courts] shall be as provided by law." (Ill. Const. 1970, art. VI, sec. 18(c).)

> "The amount of compensation to be paid any probation officer or chief probation officer appointed by any circuit court, shall be determined by the board of commissioners or supervisors ***." (Ill. Rev. Stat. 1977, ch. 38, par. 204–6.)

> "The superintendent and matron [of a county detention home], as well as all other necessary employees, shall be appointed by the Chief Judge of the Circuit Court or any Judge of that Circuit designated by the Chief Judge, to serve during his pleasure, provided that each appointment shall terminate at the next meeting of the county board if not confirmed by a majority of the board. Each shall receive a monthly salary fixed by the county board. ***" Ill. Rev. Stat. 1977, ch. 23, par. 2683.

The respondent concedes that these provisions do call for the Board's setting of the salaries, but he says that the Board's authority in this regard is not unqualified. It is conditioned or limited, he says, by its statutory duty "[t]o provide reasonable and necessary expenses for the use of the *** judges ***." (Ill. Rev. Stat. 1977, ch. 34, par. 432(Third).) In defense of his having ordered the payment of salaries in the larger amounts, the respondent argues that he has the duty to provide for probationary services in Adams County (Ill. Rev. Stat. 1977, ch. 37, par. 706–1), the authority as a chief judge to enter general orders in the exercise of his administrative authority under Rule 21 of this court (58 Ill. 2d R. 21), and inherent power to incur and direct the payment of expenses that are reasonably necessary for the efficient operation of the

court, including expenses arising from his authority to employ necessary personnel and to fix reasonable salaries for them. The respondent contends that the legislature, under section 15 of "An Act providing for a system of probation ***" (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 204—7, effective January 8, 1979), which, together with section 6—7 of the Juvenile Court Act, as amended (Ill. Rev. Stat., 1978 Supp., ch. 37, par. 706—7), provides for increased subsidization of salaries for probation officers, established a statewide policy to improve the quality of probationary services and that his providing for the higher salaries was in furtherance of this policy.

Under the circumstances presented we conclude that the administrative order, insofar as it related to the salaries in question, was improperly entered. The parties agree that it is the Board to which the General Assembly has expressly granted the power to set these salaries. We consider that the question thus is whether the Board exercised that power so unreasonably as to warrant the respondent's use of express and inherent judicial powers through the administrative order to insure the efficient operation of the court.

It cannot be said that the differences between the salaries set by the Board and by the respondent's administrative order show that the Board acted unreasonably. The difference of $150 annually in the salary for the Adams County Youth Home superintendent is slight. The difference of $1,500 in the chief probation officer's salary is larger, and the Illinois Probation and Court Services Association states that even the salary the respondent ordered compares unfavorably with salaries paid in similar counties. On the record before us, however, we cannot say that the difference is so great that it can be deemed that the salary set by the Board must be judged to be unreasonably low and that the salary called for by the respondent is a necessity for the efficient operation of the

court. Too, it is to be noted that the amounts appropriated by the Board represented increases of the salary levels of the previous year that were not insignificant, though these increases well may have been attributable to the respondent's interest in improving the compensation of court personnel. In the case of the chief probation officer the Board's appropriation called for a raise in salary from $14,300 to $16,500. If a greater increase is in order, we trust it will come in a new appropriation.

There would appear to be ongoing disagreements here as to the amounts to be appropriated for the proper operation of the court. The respondent in a pleading filed in this case claimed that there has been a neglect of the court in Adams County, asserting, among other complaints, a failure to provide courtroom facilities and to budget sufficient funds for the proper maintenance of the court's law library. He stated, too, there was a refusal to provide bailiffs for courtrooms, which was remedied only by the respondent's entering an administrative order. These claims are not before us, and whether they are valid or unfounded we need not consider.

Under our design for government, the legislative, executive and judicial branches are to be separate and equal. The public interest requires that they work in harmony. The judiciary has the responsibility of administering justice and insuring the free exercise of rights. Any default in the discharge of this responsibility would obviously be intolerable. Courts have inherent powers to protect themselves and the public they serve against default of their constitutional obligations. These powers are to enable them to perform their judicial functions with efficiency, independence and dignity. This court in *People ex rel. Illinois State Bar Association v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462, 470, has observed that "[u]nder the constitution of this State the judicial power is vested solely in the courts" and that "[i]ncluded in this

grant are all powers necessary for complete performance of the judicial functions." The Supreme Court of Pennsylvania in *Commonwealth ex rel. Carroll v. Tate* (1971), 442 Pa. 45, 52, 274 A.2d 193, 197, holding that the judiciary has inherent power to determine what funds are reasonably necessary for its efficient and effective operation and the power to compel the payment of those funds, noted:

> "[T]he Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government."

The Supreme Court of New Jersey this year affirmed a judgment of the appellate division of the superior court of New Jersey in a case with striking resemblance to the one here. *In re Court Reorganization Plan* (1978), 161 N.J. Super. 483, 391 A.2d 1255, *aff'd* (1979), 78 N.J. 498, 396 A.2d 1144, *cert. denied* (1979), 442 U.S. 930, 61 L. Ed. 2d 298, 99 S. Ct. 2861.

The assignment judge of Hudson County, New Jersey, serves as the chief of the judicial system in that county. He issued a series of orders in his administrative capacity, including orders designating personnel to serve as his assistants and establishing their salaries. The orders were entered only after discussions between the judge and legislative executives of the county had failed to resolve differences involving the court's operation and when the county officials refused to approve the requests presented by the assignment judge.

The appellate division of the superior court of New Jersey, in upholding the administrative action of the judge, stated:

> "It follows that a court, and in this case the assignment judge in his administrative capacity,

has the inherent power to provide the facilities, personnel and resources reasonably necessary for the performance of the judicial functions in the county. And as a corollary thereof he must have the power to compel the appropriation and expenditure of funds by the coequal executive and legislative branches of government to accomplish such purpose, subject only to bounds of reasonable discretion. See Hazard, McNamara and Sentilles, 'Court Finance and Unitary Budgeting,' 81 Yale L.J. 1286, 1287-1291 (1972); Vanderbilt, The Doctrine of Separation of Powers and its Presentday Significance (1953); Annotation, 'Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes,' 59 A.L.R.3d 569 (1974).

We should emphasize at this point that this inherent power should be exercised very sparingly, in deference to the prerogatives of the legislative and executive branches. It should be invoked by the judicial branch only where necessary personnel and facilities are not provided by the other branches of government through the traditional and conventional methods. 'The separation-of-powers doctrine contemplates that the several branches will cooperate to the end that government will succeed in its mission.' *In re Zicarelli,* 55 N.J. 249, 264, 261 A.2d 129, 137 (1970).

\* \* \*

In applying these principles to the narrow appellate issue herein we conclude that with respect to the fixing of salaries for all the employees designated as assistants to the assignment judge, the latter has the inherent power to establish the compensation for such assistants

provided that the quantum thereof is reasonable and appropriate. For cases sustaining the inherent power of the judiciary not only to appoint necessary personnel but to fix their compensation see: [citations]." 161 N.J. Super. 483, 491-92, 391 A.2d 1255, 1259-60.

The court rejected the contention that the judge did not have the power to fix compensation because of legislation providing that the appointment of personnel and the fixing of salaries were matters for decision by county officials. The court said:

"As we have already noted, the inherent power of the judiciary stemming from its exclusive control of the courts and their administration is paramount to the right of the legislative or executive branches to interfere therewith. And since this inherent power is derived from constitutional imperatives it must transcend any legislative directives in conflict therewith." 161 N.J. Super. 483, 494, 391 A.2d 1255, 1260.

We have commented at some length on this question of authority because of its importance in insuring the discharge of constitutional responsibilities imposed on the judiciary.

For the reasons given, the writ of *mandamus* is allowed, and it is directed that those portions of the respondent's administrative order of February 7, 1979, herein discussed be expunged.

*Writ awarded.*